**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
|  | * |  |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA** | * |  |
|  | * |  |
| Plaintiff, | * |  |
| v. | * | Case No. ELH-14-1585 |
| **CYNTHIA L. WILSON** | * |  |
| Defendant. | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

The above-referenced case was referred to the undersigned for review of plaintiff's motion for default judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF No. 8.) Currently pending is plaintiff's Motion for Entry of Default Judgment ("Motion"). (ECF No. 7.) I have reviewed plaintiff's Motion, the Affidavit of Elizabeth Simpson in Support of Motion for Entry of Default Judgment (ECF No. 7-1), and the Affidavit of Colleen K. O'Brien in Support of Motion for Entry of Default Judgment (ECF No. 7-15). Defendant has not filed any response to plaintiff's filings. No hearing is deemed necessary. See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons discussed herein, I respectfully recommend that plaintiff's Motion (ECF No. 7) be GRANTED and that relief be awarded as set forth herein.

I.     **STANDARD FOR ENTRY OF DEFAULT JUDGMENT**

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001). It remains for the court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id. If the court determines that liability is established, the court must then determine the appropriate amount of damages. Id. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154-155 (2d Cir. 1999). The court may make a determination of damages without a hearing, so long as there is adequate evidence in the record, such as detailed affidavits or documentary evidence, for the award. See, e.g., Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001).

II.     **DISCUSSION**

   A. **Defendant's Liability**

I have reviewed plaintiff's Complaint (ECF No. 1), and find that plaintiff has stated causes of action based on a breach of a Disability Payment Options/Reimbursement Agreement ("Reimbursement Agreement") signed by defendant as a participant in a group long-term disability plan ("the Plan") offered by her employer. Plaintiff Unum Life Insurance Company of America ("Unum") is an insurance company incorporated under the laws of the State of Maine, and authorized to transact business in the State of Maryland. (ECF No. 1 at ¶ 1.) Plaintiff issued the Plan to defendant's employer, Northrup Grumman Corporation. (ECF No. 1 at ¶ 6.) The Plan qualifies as an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. (ECF No. 1 at ¶ 6.) Defendant

submitted a claim to plaintiff under the Plan, and began receiving long-term disability ("LTD") benefits on February 26, 2007. (ECF No. 1 at ¶¶ 7-8.)

The Plan provided that defendant's monthly LTD benefits would be reduced by defendant's "deductible sources of income," such as the amount of benefits defendant received or was entitled to receive under the United States Social Security Act ("SSA"), as well as the disability and retirement payments defendant received under her employer's retirement plan. (ECF No. 1 at ¶ 9.)  The Plan also provided that plaintiff would estimate defendant's entitlement to Social Security disability income ("SSDI"), and reduce her monthly LTD benefits by that estimated amount if such benefits "[had] not been awarded" and "[had] not been denied." (ECF No. 1 at ¶ 12.) On April 10, 2007, defendant signed a Reimbursement Agreement, pursuant to which she agreed to repay plaintiff for any overpayment of LTD benefits resulting from her receipt of deductible sources of income. (ECF No. 1 at ¶ 10.) Plaintiff subsequently paid defendant unreduced LTD benefits under the Plan. (ECF No. 1 at ¶ 11.)

From September of 2007 through April of 2009, plaintiff sent defendant multiple requests for information regarding the status of her application for SSDI benefits. (ECF No. 1 at ¶ 12.) Defendant provided no proof that she had either applied for or been denied such benefits. (ECF No. 1 at ¶ 13.) Therefore, on May 20, 2009, plaintiff informed defendant that it would estimate her monthly SSDI benefits and reduce her monthly LTD benefits accordingly. (ECF No. 1 at ¶ 13.) In addition, on May 18, 2011, plaintiff became aware that defendant received pension benefits from her employer, which constituted a deductible source of income under the Plan. (ECF No. 1 at ¶ 14.)

Defendant's failure to apply for SSDI benefits and receipt of pension benefits resulted in an overpayment by plaintiff of $49,463.25. (ECF No. 1 at ¶ 15.) On May 20, 2011, plaintiff

requested that defendant repay that amount. (ECF No. 1 at ¶ 15.) When defendant failed to do so, plaintiff began to withhold her monthly LTD benefits and applied that amount to satisfy the overpayment. (ECF No. 1 at ¶ 16.)

On December 4, 2012, defendant's LTD benefits terminated for failure to provide proof of claim. (ECF No. 1 at ¶ 17.) An overpayment of $36,679.18 has remained due and owing to plaintiff since that date. (ECF No. 1 at ¶ 17.) Despite plaintiff's additional requests for payment, defendant has failed to repay that amount. (ECF No. 1 at ¶ 17.) Thus, plaintiff filed this suit seeking recovery of the outstanding overpayment and other damages.

Plaintiff served defendant with a Summons and copy of the Complaint on May 23, 2014. (ECF No. 4.) After defendant failed to answer the Complaint or otherwise defend within twenty-one days, plaintiffs properly moved, pursuant to Federal Rule of Civil Procedure 55(a), for an entry of default. (ECF No. 5.) The Clerk of this court entered an Order of Default on July 9, 2014. (ECF No. 6.) On July 31, 2014, plaintiff filed the pending Motion (ECF No. 7), to which defendant has not responded. Plaintiff seeks damages in the following amount: (1) $36,679.18 for the breach of the Plan and the Reimbursement Agreement; (2) $5,419.50 in attorneys' fees; (3) $701.86 in costs; and (4) post-judgment interest at the legal rate. (ECF No. 7 at ¶¶ 24-26; ECF No. 7-15.) In support thereof, plaintiff submitted the affidavit of Elizabeth Simpson, Manager in the Financial Recovery Unit at Unum, and the affidavit of Colleen K. O'Brien, co-counsel for plaintiff (ECF Nos. 7-1 and 7-15.) Based upon my review of the record in this case, I conclude that plaintiff has demonstrated defendant is liable to plaintiff for damages and that plaintiff is entitled to a default judgment against defendant.

### B. Damages

Having determined that plaintiff has proven liability, the undersigned now undertakes an independent determination of the damages to which it is entitled. Pursuant to ERISA and the provisions of the Plan and the Reimbursement Agreement, plaintiff seeks to recover a total sum of the $42,800.54 from defendant. (ECF No. 7.)

#### 1. Breach of Reimbursement Agreement

Plaintiff seeks to recover $36,679.18 arising from defendant's breach of the Reimbursement Agreement. (ECF No. 7 at ¶ 24.) Plaintiff presents the affidavit of Elizabeth Simpson, Manager in the Financial Recovery Unit at Unum, as well as the Plan and Reimbursement Agreement. (ECF Nos. 7-1, 7-2, and 7-3.) Defendant received monthly LTD benefits in the amount of $3,338.36 from February 26, 2007 through May 25, 2009. (ECF No. 7-1 at ¶ 10; ECF No. 7-6.) As previously discussed, however, defendant promised to pay back any overpayment of LTD benefits resulting from her receipt of deductible sources of income as outlined in the Plan. (ECF No. 7-3.) Plaintiff sent numerous correspondence to defendant to determine whether she had applied for or been denied SSDI benefits, a deductible source of income under the Plan. (ECF No. 7-1 at ¶ 11-12.) Because defendant never responded, plaintiff estimated that she was entitled to $1,445.00 in SSDI benefits per month, and reduced her monthly LTD benefits by that amount from May 26, 2009 through April 25, 2011 ($1,445.00 x twenty-three months = $33,235.00 total reduction). (ECF No. 7-1 at ¶¶ 13; ECF No. 7-6.) Nonetheless, defendant's LTD benefits should have been reduced by the SSDI benefits for which she may have been eligible starting February 26, 2007, the date she began receiving benefits under the Plan. Accordingly, based on an SSDI award date of February 1, 2007, plaintiff estimated that defendant would have received $1,464.00 in SSDI benefits per month. (ECF No.

7-1 at ¶ 16.) Therefore, from February 26, 2007 through April 25, 2011, plaintiff overpaid defendant $73,200.00 in LTD benefits ($1,464.00 x fifty months = $73,200.00). (ECF No. 7-1 at ¶ 16.)

Beginning August 1, 2010, defendant received monthly pension retirement benefits of $1,027.57 from her employer. (ECF No. 7-1 at ¶ 14.) These benefits also qualified as a deductible source of income under the Plan. (ECF No. 7-1 at ¶ 14.) Therefore, from August 1, 2010 through April 25, 2011, plaintiff overpaid defendant $9,076.87 in LTD benefits ($1,027.57 x eight months, twenty-five days = $9,076.87). (ECF No. 7-1 at ¶ 14.)

On August 6, 2010, defendant received a lump sum pension disability payment of $31,281.27, which was a deductible source of income under the Plan. (ECF No. 7-1 at ¶ 15.) The Plan stipulated that lump sum payments should be allocated over the defendant's life expectancy. (ECF No. 7-1 at ¶ 15.) As of the date payment was made, defendant was a sixty-year-old female with a life expectancy of 24.5 years. (ECF No. 7-1 at ¶ 15.) Accordingly, the monthly offset for the $31,281.27 payment was $106.40. (ECF No. 7-1 at ¶ 15.) Therefore, from August 6, 2010 through April 25, 2011, plaintiff overpaid defendant $922.13 in LTD benefits ($106.40 x eight months, twenty days = $922.13). (ECF No. 7-1 at ¶ 15.)

Plaintiff paid defendant $133,182.25 in LTD benefits from February 26, 2007 through April 25, 2011. (ECF No. 7-1 at ¶ 17; ECF No. 7-6.) Defendant should have only been paid $83,719.00, however, because she failed to apply for SSDI benefits and received pension benefits from her employer. (ECF No. 7-1 at ¶ 17; ECF No. 7-6.) Therefore, the total overpayment of LTD benefits made by plaintiff to defendant was $49,463.25. (ECF No. 7-1 at ¶ 17; ECF No. 7-6.)

Defendant has failed to reimburse plaintiff for the overpayment. (ECF No. 7-1 at ¶¶ 19-20.) Accordingly, beginning May 26, 2011, and pursuant to the Plan and Reimbursement Agreement, plaintiff began withholding defendant's monthly LTD benefits and applied that amount to satisfy the overpayment balance. (ECF No. 7-1 at ¶ 20.) As of December 4, 2012, the date defendant's LTD benefits terminated for failure to provide proof of her disability claim, the outstanding overpayment amount remaining due and owing to plaintiff is $36,679.18 ($49,463.2te5 initial overpayment – $12,784.07 recoupment of overpayment). (ECF No. 7-1 at ¶ 21.)

After review of the affidavit and documents submitted, I find that plaintiff has presented sufficient evidence to establish that defendant breached the Reimbursement Agreement and, as a result, owes the sum of $36,679.18.[1] Accordingly, I recommend granting plaintiff's request for damages for defendant's breach of the Reimbursement Agreement in the amount of $36,679.18.

   **2. Interest**

Plaintiff also seeks to recover post-judgment interest at the legal rate.[2] (ECF No. 7.) An award of post-judgment interest is mandated by federal law. 28 U.S.C. § 1961 (2000). Although ERISA does not specifically address the awarding of post-judgment interest, the Fourth Circuit has concluded that the federal post-judgment statute applies in such cases. Quesinberry v. Life

---

[1] Plaintiff paid defendant $133,182.25 in LTD benefits from 2007 through 2011. But for plaintiff's overpayments in the amount of $73,200.00, $9,076.87, and $922.13, however, defendant would have only been paid $83,719.00 in LTD benefits. Therefore, plaintiff overpaid defendant in the total amount of $49,463.25. Because plaintiff withheld $12,784.07 to satisfy the overpayment balance, the amount left due and owing to plaintiff is $36,679.18.

[2] Although, in the Complaint, plaintiff requested "pre-complaint and pre-judgment interest as allowed by law" (ECF No. 1), plaintiff only seeks "post-judgment interest at the legal rate" in its Motion for Entry of Default Judgment (ECF No. 7). Accordingly, the undersigned addresses the relief sought in plaintiff's Motion.

Ins. Co. of N. Am., 987 F.2d 1017, 1031 (4th Cir. 1993). Accordingly, I recommend granting plaintiff's request for post-judgment interest in accordance with applicable statutory law.

### C. Attorneys' Fees and Costs

Plaintiff requests $5,419.50 in attorneys' fees and $701.86 in costs. (ECF No. 7 at ¶ 26; ECF No. 7-15.) The Reimbursement Agreement and ERISA provide for an award of attorneys' fees and costs. 29 U.S.C. § 502(g)(1); § 1132(g)(1); (ECF No. 7-3). In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008). The plaintiff must demonstrate that "the number of hours for which [it] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." Victor Stanley, Inc. v. Creative Pipe, Inc., No. MJG-06-2662, 2011 WL 2552472, at *3 (D. Md. Jan. 24, 2011) (internal quotation marks omitted).

In support of its request for attorneys' fees and costs, plaintiff submits the affidavit of Colleen K. O'Brien, an associate with the law firm retained by plaintiff in the instant action. (ECF No. 7-15.) Ms. O'Brien states that her firm performed 33.9 hours of work in this case at an hourly rate of $210.00 for principals[3] and $155.00 for associates. (ECF No. 7-15 at ¶¶ 9-10; Exhibit E-1.) Scott M. Trager, a principal at Ms. O'Brien's firm, billed 3 hours at $210.00 per hour for a total of $630.00, and Ms. O'Brien billed 30.9 hours at $155.00 per hour for a total of $4,789.50. (ECF No. 7-15 at ¶¶ 9-10; Exhibit E-1.) Given Mr. Trager's fifteen years of

---

[3] There is a discrepancy between Ms. O'Brien's affidavit (ECF No. 7-15 ¶ 10), which states that Mr. Trager's hourly rate is $205.00, and the chart attached thereto (Exhibit E-1), which states that Mr. Trager's hourly rate is $210.00. Given Mr. Trager's fifteen years of experience, the hourly rate of $210.00 is consistent with the guidelines established in the Local Rules, and will be applied in my determination of attorneys' fees.

experience (ECF No. 7-15 at ¶ 10), I find that $210.00 is a reasonable hourly rate. Loc. R. App. B.3. Additionally, given Ms. O'Brien's three years of experience (ECF No. 7-15 at ¶ 9), I find that $155.00 is a reasonable hourly rate. Loc. R. App. B.3. The record demonstrates that the work performed included the following activities: reviewing the case file and preparing an initial strategy, preparing a demand letter, preparing the complaint and related papers, and preparing the instant Motion. (ECF No. 7-15; Exhibit E-1.) Accordingly, because the time spent and hourly rates are reasonable and consistent with attorney fee awards in similar cases, I recommend granting plaintiff's request for attorneys' fees in the amount of $5,419.50.

Finally, I find that plaintiff's litigation costs of $701.86 are reasonable and documented in the record. (ECF No. 7-15 at 3.) See also Schedule of Fees, http://www.mdd.uscourts.gov/publications/Forms/ScheduleofFees.pdf (January 1, 2014) (cost of filing a civil action in this court is $400.00). Accordingly, I recommend granting plaintiff's request for $701.86 in costs.

## III. CONCLUSION

In sum, I recommend that:

1. The court grant plaintiff's Motion for Entry of Default Judgment (ECF No. 7); and
2. The court enter judgment in favor of plaintiff in the amount of $42,800.54, consisting of (1) $36,679.18 for the breach of the Plan and the Reimbursement Agreement, (2) $5,419.50 in attorneys' fees, and (3) $701.86 in costs, plus post-judgment interest in accordance with applicable statutory law.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendant at the address listed on plaintiff's Complaint. (ECF No. 1.)

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Date:   11/6/14                                              /s/                        
                                                      Beth P. Gesner
                                                      United States Magistrate Judge